# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                            No. CR 09-3206 JB

ANTONIO HUERTA-RODRIGUEZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Disclosure of Police Personnel Files, filed July 6, 2010 (Doc. 50). The Court held a hearing on August 2, 2010. The primary issues are: (i) whether the Court should enter an order requiring Plaintiff United States of America to disclose to Defendant Antonio Huerta-Rodriguez' counsel the personnel files of certain agents and officers involved in the search of his residence on October 16, 2009; and (ii) if the Court does not require the production of the files, whether the Court should conduct an in camera review of the files. The Court will grant the motion in part and deny the motion in part. The Court will require the United States to review any personnel files in its possession for exculpatory material and produce such material to Huerta-Rodriguez. Because the United States has disclosed the information in New Mexico State Police Agent Joey Gallegos' file regarding disciplinary action, and because the United States does not have possession of the personnel files of Gallegos or other New Mexico State Police officers, the Court will deny his request for production of those personnel files. Because the United States represents that it has reviewed the personnel files of agents and officers involved in the search of Huerta-Rodriguez' residence and has disclosed all discoverable

materials therein, the Court will deny Huerta-Rodriguez' request for an in camera review. The Court will deny the remainder of the requests in the motion without prejudice to Huerta-Rodriguez renewing his requests if he can present evidence later that the United States is improperly withholding exculpatory evidence.

## **FACTUAL BACKGROUND**

The facts will, to some degree, be determined more fully on Huerta-Rodriguez' pending motion to suppress. See Defendant's Motion to Suppress Evidence and Supporting Memorandum, filed March 9, 2010 (Doc. 24). For present purposes, however, it suffices to say that, in September 2009, agents from the Region III Narcotics Task Force in Santa Fe, New Mexico were conducting an investigation into a man named Fred Archuleta. See United States' Response to Defendant's Motion for Disclosure of Police Personnel Files at 1, filed July 26, 2010 (Doc. 55) ("United States' Response"). Agents had been conducting surveillance on Archuleta and had seen a charcoal-gray Dodge pick-up truck with the New Mexico license plate of JLY-483 visit his address several times. See United States' Response at 1. A reliable informant told Agent Kevin Mondragon that the driver of the vehicle was Alejandro Rodriguez-Estrada, a cocaine distributor in the Rio Arriba County, New Mexico area who deals in quantities of ounces of cocaine. See id. at 1. The informant also told Mondragon that Rodriguez-Estrada is Archuleta's cocaine supplier. See id. at 1-2.

Based on this information, agents began to investigate Rodriguez-Estrada during the month of October 2009. See id. at 2. An informant gave information to Mondragon that both Rodriguez-Estrada and his father-in-law, Huerta-Rodriguez, were selling quantities of cocaine throughout Rio Arriba County. See id. at 2. Agents conducted surveillance of both Rodriguez-Estrada's and Huerta-Rodriguez' homes, and observed foot and vehicle traffic consistent

with narcotics transactions.  <u>See</u> United States' Response at 2.  The informant also told Mondragon that he or she had observed cocaine at Huerta-Rodriguez' residence during October 2009.  <u>See</u> <u>id.</u> at 2.  Agents were able to secure  a search warrant for Rodriguez-Estrada's home and served that warrant on October 16, 2009.  <u>See</u> United States' Response at 2.  During the execution of the search, Rodriguez-Estrada admitted to trafficking in cocaine and told agents that Archuleta was his customer.  <u>See</u> <u>id.</u> at 2.

The United States contends that, because of the previous surveillance and Rodriguez-Estrada's admission, Mondragon instructed Gallegos to conduct a knock-and-talk at Huerta-Rodriguez' residence.  <u>See</u> <u>id.</u> at 2.  Huerta-Rodriguez asserts that, on the day of the search, October 16, 2009, Region III Task Force Officers from Santa Fe went to Huerta-Rodriguez' residence with the intent to circumvent the search-warrant requirement and to secure consent to search.  <u>See</u> Motion at 2.  The United States acknowledged in its Amended Response to Defendant's Motion to Suppress Evidence, filed March 30, 2010 (Doc. 27), that the agents did not have a search warrant when they entered the home, but contend that the entry was made with consent given voluntarily and without coercion.  <u>See</u> <u>id.</u> at 2-3.

The United States asserts that Gallegos knocked on the door, spoke to Huerta-Rodriguez in Spanish, and explained to him that a search warrant was being executed at Rodriguez-Estrada's residence and that agents believed Huerta-Rodriguez to be trafficking in cocaine as well.  <u>See</u> United States' Response at 2.  The United States contends that Gallegos asked Huerta-Rodriguez if the officers could search his home for drugs and/or illegal items.  <u>See</u> <u>id.</u> at 2.  The United States maintains that Huerta-Rodriguez consented both verbally and in written form.  <u>See</u> <u>id.</u> at 2.

Huerta-Rodriguez, on the other hand, contends that, when the agents arrived at his residence, they physically blocked the door so that Huerta-Rodriguez' wife could not close the door and avoid

the intrusion into her home.  See Motion at 2.  They then allegedly lied to her about having a search warrant and threatened to seize her property if she did not allow them to search her residence.  See Motion at 2.  In this manner, Huerta-Rodriguez maintains, they forced and deceived their way into his residence, conducted a search, and seized the firearm which is the subject of this cause of action.  See id. at 2.

The United States counters that the officers allege that they did no more than knock on Huerta-Rodriguez' door, that Huerta-Rodriguez -- not his wife -- answered the door, and that he -- not she -- gave them consent to search.  See United States' Response at 2.  The United States contends that, during this encounter, Gallegos asked Huerta-Rodriguez if he had any weapons or guns in his home.  See id. at 2.  Huerta-Rodriguez responded in the affirmative and led Gallegos to a closet where Gallegos located a Colt .357 Magnum handgun.  See id. at 2.  Huerta-Rodriguez told Gallegos that the handgun was his and that he had received it from his father-in-law.  See id. at 2.  Additionally, the officers found a box of Remington ammunition and thirteen Winchester cartridges in a dresser drawer.  See id. at 2-3.

Following the search, Mondragon arrived at the home and read Huerta-Rodriguez his Miranda[1] warnings in Spanish, and Huerta-Rodriguez agreed to speak to Mondragon.  See id. at 3.  During this time, Huerta-Rodriguez was seated on his couch and not under arrest, nor was he in handcuffs or confined.  See id. at 3.  He then told Mondragon the same thing that he had told Gallegos, i.e., that the handgun was his and that he had received it from his father-in-law.  See id. at 3.  Additionally, he told Gallegos that his father-in-law had passed away six years ago and that he had kept the handgun since that time.  See id. at 3.  He also told Mondragon that he had given

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

consent to Gallegos to enter his home.  See id. at 3.  He also admitted to Mondragon that he was in the country illegally.  See United States' Response at 3.  This statement was recorded.  At that time, Huerta-Rodriguez was placed under arrest.  See id. at 3.

## PROCEDURAL BACKGROUND

Under the Magistrate Judge's Order entered on November 12, 2009, as well as under the general obligations of applicable case law and under the Federal Rules of Criminal Procedure, the United States is obligated to provide Huerta-Rodriguez with Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), exculpatory materials.  See Order ¶ 6, at 5, filed November 12, 2009 (Doc. 14).  The Magistrate Judge's Order states, at paragraph 8A, that no party shall file discovery motions unless the filing party "[i]dentifies with specificity the evidence required to be disclosed[.]"  Order ¶ 8A, at 5.  Additionally, the Order states that a party may petition the Court for disclosure only after a specific request, stating when the request was made, the date such disclosure was denied, and the reason for the denial.  See id. ¶ 8B, at 6.

Huerta-Rodriguez moves the Court, pursuant to rule 16 of the Federal Rules of Criminal Procedure, for an order requiring the United States to disclose to his counsel the entire personnel files of Gallegos, Senior Special Agent Steven G. Lopez, and any other officers involved in the search of Huerta-Rodriguez' house in the custody of Immigration and Customs Enforcement ("ICE"), the Office of the Resident Agent in Charge in Albuquerque, New Mexico, the Region III Narcotics Task Force, or any other police agency.  See Motion at 1.  The motion contemplates, but states it is not necessarily limited to: (i) citizen complaints; (ii) disciplinary actions; (iii) internal-affairs reports; (iv) performance evaluations; and (v) all other material, written or otherwise, revealing specific acts of dishonesty or misconduct bearing on these police officers' character for truthfulness as well as their propensity for engaging in unlawful activity going beyond the scope of

their official duties.  See Motion at 1-2.

On July 19, 2010, the United States filed a Motion for Extension of Time to Respond to Defendant's Motion for Disclosure of Police Personnel Files.  See Doc. 52 ("Motion for Extension of Time").  The United States requested that the Court allow a seven-day extension of time in which to respond to Huerta-Rodriguez' motion for disclosure.  Assistant United States Attorney Linda Mott stated that she had requested any and all documents relating to the officer witnesses from the New Mexico State Police as it pertains to Huerta-Rodriguez' motion.  See Motion for Extension of Time at 1.  Although she stated that she did not expect Brady v. Maryland or Giglio v. United States material in return, she maintained that the United States was exercising due diligence in exploring these areas for possible discoverable information.  Ms. Mott anticipated filing a response to Huerta-Rodriguez' motion requesting a denial of the motion to disclose once she had reviewed any forthcoming materials that the New Mexico Department of Public Safety has submitted or filing a motion for the Court's review of materials.  See Motion for Extension of Time at 1-2.  After reviewing the motion, and finding good grounds in the interests of justice to extend the time in which the United States might respond, the Court ordered that the time in which the United States had to file its response to the motion for disclosure of police personnel files was extended until July 26, 2010.  See Order, filed July 26, 2010 (Doc. 54).

On July 26, 2010, the United States filed its Response to the Defendant's Motion for Disclosure of Police Personnel Files.  The United States requests that the Court deny Huerta-Rodriguez' motion. The United States represents that it is aware of its ongoing obligations regarding disclosure and will continue to comply.  See United States' Response at 6.  It further represents that it is continuing to explore matters which need to be disclosed, and will provide any information to the Court in camera and/or to counsel.  See United States' Response at 5.  On

July 30, 2010, Huerta-Rodriguez filed his Reply to Government's Response to Defendant's Motion for Disclosure of Police Personnel Files.  See Doc. 58.  Huerta-Rodriguez continued to request production of the files or, alternatively, in camera review.

At the hearing, Assistant United States Attorney Norman Cairns informed the Court that it is the procedure of the United States Attorney's Office to request to view the personnel files of testifying witnesses from the New Mexico State Police, and he assumes that Ms. Mott, who was not available at the time of the hearing, requested to see the relevant files of officers involved in this case.  See Transcript of Hearing at 11:23-12:2 (taken August 2, 2010)("Tr.")(Cairns).[2]  Mr. Cairns explained that an in camera review of New Mexico State Police personnel files could be difficult, because the New Mexico State Police Department does not turn over the officers' personnel files without a subpoena; as a courtesy, the New Mexico State Police and other state law-enforcement entities allow the United States Attorney's Office only to look at files.  See Tr. at 12:21-13:16 (Cairns).  The New Mexico State Police permits the United States only to review a personnel file if it contains disciplinary information, and if there is disciplinary information, the United States may only take notes; the New Mexico State Police do not permit the United States to photocopy any documents in the personnel files or to take the personnel files into its possession.  See Tr. at 15:2-21 (Cairns).

Mr. Cairns and Mario A. Esparza, Huerta-Rodriguez' attorney, informed the Court that the United States has disclosed to Huerta-Rodriguez information from Gallegos' personnel file.  See Tr. at 8:16-21 (Esparza); id. at 8:25-9:4 (Cairns).  Mr. Cairns indicated that the United States also reviewed Lopez' personnel file, and that there is no Brady v. Maryland or Giglio v. United States

---

[2] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Case 1:09-cr-03206-JB   Document 65   Filed 08/12/10   Page 8 of 18

material in the file to disclose. <u>See</u> Tr. at 11:21-23 (Cairns). Mr. Esparza represented that he received a letter from Ms. Mott stating that the only officer with any information in his or her personnel file is Gallegos, and the letter indicated that Gallegos had four instances of failure to use recording equipment when conducting an investigation. <u>See</u> Tr. at 8:16-21 (Esparza). While the United States does not agree that the produced information is exculpatory, the United States provided the information anyway. <u>See</u> Tr. at 9:2-4 (Cairns). While the information does not reflect on Gallegos' honesty, it casts some light on why there is not a complete recording of Gallegos' and Huerta-Rodriguez' interaction in this case. Mr. Cairns also explained that it is the United States' policy to not disclose all of the memoranda and other documents relating to the police department's disciplinary action against an officer. <u>See</u> Tr. at 12:6-23 (Cairns). The United States discloses the conduct to the defendant's counsel, and defense counsel may infer that the police department deemed disciplinary action appropriate for the conduct disclosed. <u>See</u> Tr. at 12:18-20 (Cairns).

The Court inquired who all was present at the knock-and-talk, and Mr. Cairns indicated that a supplemental report, which both the United States and Huerta-Rodriguez had just received, indicates that New Mexico State Police Agent Thomas Maes accompanied Gallegos. <u>See</u> Tr. at 15:2-5 (Cairns). Mr. Esparza stated that he believes it was only Gallegos who was engaging in conversation with Huerta-Rodriguez and his wife during the knock-and-talk. <u>See</u> Tr. at 7:11-18 (Esparza). Mr. Esparza represented that he will communicate with Ms. Mott about her inquiry into Mondragon's and Maes' personnel files, but that is the sum of Huerta-Rodriguez' current request.

> MR. ESPARZA: Like I said, I know Mr. Cairns is somewhat a disadvantage, because he just inherited this case this morning, so after today Judge, I'll communicate with Ms. Mott, whose case this is, at least inquire with the [New Mexico State Police] liaison to see if there's anything the personnel files of Agent Mondragon or Agent Maes an approximate there's nothing then that's the end of our request.

-8-

Tr. at 16:20-25.

## LAW REGARDING THE UNITED STATES' DUTY TO DISCLOSE IN CRIMINAL CASES

The Due Process Clause of the Constitution of the United States requires the United States to disclose information favorable to the accused that is material to either guilt or to punishment. In Brady v. Maryland, the Supreme Court of the United States explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In Giglio v. United States, the Supreme Court extended the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory. See 405 U.S. at 153; Douglas v. Workman, 560 F.3d 1156, 1172-73 (10th Cir. 2009)("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [United States'] witnesses by showing bias and interest.'")(quoting United States v. Bagley, 473 U.S. 667, 676 (1985)); United States v. Abello-Silva, 948 F.2d 1168, 1179 (10th Cir. 1991)("Impeachment evidence merits the same constitutional treatment as exculpatory evidence."). Finally, the Supreme Court has refined Brady v. Maryland and clarified that it is not necessary that a defendant request exculpatory evidence; "regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles v. Whitley, 514 U.S. 419, 433 (1995)(quoting United States v. Bagley, 473 U.S. at 682). See Douglas v. Workman, 560 F.3d at 1172 ("The government's obligation to disclose exculpatory evidence does not turn on an accused's request.");

United States v. Summers, 414 F.3d 1287, 1304 (10th Cir. 2005)("[T]he prosecution has an affirmative duty to disclose exculpatory evidence clearly supporting a claim of innocence even without request.").

Brady v. Maryland requires the United States to disclose only material exculpatory evidence in its possession.  To be deemed "material" under Brady v. Maryland, however, the evidence must be admissible.  See United States v. Salem, 578 F.3d 682, 686 (7th Cir. 1995).  In Banks v. Reynolds, 54 F.3d 1508 (10th Cir. 1995), the United States Court of Appeals for the Tenth Circuit noted that the materiality review does not include speculation or a mere possibility that evidence is exculpatory.  See 54 F.3d at 1517.  See United States v. Mayes, 917 F.2d 457, 461 (10th Cir. 1990)("The constitution does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the Government . . . .'") (quoting Jencks v. United States, 353 U.S. 657, 667 (1957)).

The burden is on the United States to produce exculpatory materials; the burden is not on the defendant to first point out that such materials exist.  See United States v. Deutsch, 475 F.2d 55, 57 (5th Cir. 1973)(granting a mistrial for failure to produce personnel files of government witnesses). In United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), the United States Court of Appeals for the Ninth Circuit noted that the United States has a duty, upon request from the defendant, to review personnel files of testifying officers and to disclose information material to the defendant's case. See 931 F.2d at 31.  In United States v. Yarborough, No. 06-CR-190, 2007 WL 962926 (W.D.N.Y. March 28, 2007), the United States District Court for the Western District of New Mexico dealt with a similar issue related to disclosure of law-enforcement witnesses' personnel files.  See 2007 WL 962926, at **11-12.  The district court found discovery to the defendant was not required because "the Government has stated it does not, at present, possess any Brady

exculpatory material but acknowledges its duty to provide <u>Brady</u> material if obtained . . . ." 2007 WL 962926, at *12.

"It is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess.'" <u>United States v. Tierney</u>, 947 F.2d 854, 864 (8th Cir. 1991)(quoting <u>United States v. Beaver</u>, 524 F.2d 963, 966 (5th Cir. 1975), <u>cert. denied</u>, 425 U.S. 905 (1976)).  <u>See United States v. Kraemer</u>, 810 F.2d 173, 178 (8th Cir. 1987)(explaining that the prosecution is not required "to search out exculpatory evidence for the defendant"); <u>United States v. Badonie</u>, No. CR 03-2062, 2005 U.S. Dist. LEXIS 21928, at *2 (D.N.M. Aug. 29, 2005)(Browning, J.).  On the other hand, "a prosecutor's office cannot get around <u>Brady</u> by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." <u>Carey v. Duckworth</u>, 738 F.2d 875, 878 (7th Cir. 1984).  A prosecutor must disclose information of which it has knowledge and access.  <u>See United States v. Bryan</u>, 868 F.2d 1032, 1037 (9th Cir. 1989).  A prosecutor may have a duty to search files maintained by other "governmental agencies closely aligned with the prosecution" when there is "some reasonable prospect or notice of finding exculpatory evidence." <u>United States v. Brooks</u>, 966 F.2d 1500, 1503 (D.C. Cir. 1992)). A prosecutor does not have a duty, however, to obtain evidence from third parties.  <u>See United States v. Combs</u>, 267 F.3d 1167, 1173 (10th Cir. 2001)(observing that <u>Brady v. Maryland</u> does not oblige the government to obtain evidence from third parties).

## LAW REGARDING RULE 404(b) EVIDENCE

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Rule 404(a) generally bans character evidence offered for the purpose of proving action in conformity therewith on a particular occasion.  <u>See</u> Fed.

R. Evid. 404(a).  The exceptions to this general ban are few.  The rules of evidence make allowances

for certain character evidence of a witness through rules 607, 608, and 609.  Although the rules

generally prohibit the admission of character evidence, rule 404(b) provides:

> (b) **Other Crimes, Wrongs, or Acts.** -- Evidence of other crimes, wrongs, or acts
> is not admissible to prove the character of a person in order to show action in
> conformity therewith.  It may, however, be admissible for other purposes, such as
> proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or
> absence of mistake or accident, provided that upon request by the accused, the
> prosecution in a criminal case shall provide reasonable notice in advance of trial, or
> during trial if the court excuses pretrial notice on good cause shown, of the general
> nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b)(bold in original).  Rule 404(b) states that evidence of other crimes or wrongs

may not be introduced against a person to show that, upon a later occasion, he or she acted in

conformity with that prior behavior except to prove some other issue, including a number of

enumerated issues.  A party introducing 404(b) evidence must show that: (i) the evidence is

introduced for a proper purpose; (ii) the evidence is relevant; (iii) the evidence has probative value

that is not substantially outweighed by the potential for unfair prejudice; and (iv) the party

introducing the evidence must precisely articulate the purpose for which the evidence is offered.

See United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United

States, 485 U.S. 681, 691-92 (1988)).

### LAW REGARDING RULE 608(b) EVIDENCE

Rule 608 provides certain mechanisms for attacking witnesses' character for truthfulness or

untruthfulness.  Rule 608(a) states:

> The credibility of a witness may be attacked or supported by evidence in the form
> of opinion or reputation, but subject to these limitations: (1) the evidence may refer
> only to character for truthfulness or untruthfulness, and (2) evidence of truthful
> character is admissible only after the character of the witness for truthfulness has
> been attacked by opinion or reputation evidence or otherwise.

Fed. R. Evid. 608(a).  "Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness." United States v. Beltran-Garcia, 338 Fed. Appx. 765, 770 (10th Cir. 2009).  Rule 608(b) lays out the mechanics of using evidence of specific instances of conduct for impeachment purposes:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed. R. Evid. 608(b).  "Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence."  United States v. Beltran-Garcia, 338 Fed. Appx. at 770.

> Although 608(b) of the Federal Rules of Evidence does state that specific instances of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993).

## ANALYSIS

Huerta-Rodriguez requests that the Court order, pursuant to Brady v. Maryland and rule 16, disclosure of the entire personnel files of Gallegos, Lopez, and the entire Region III Narcotics Task Force in Santa Fe.  See Motion at 1.  The United States acknowledges its obligations and contends that it has disclosed the exculpatory material that it has found.  The Court will order the United States to search for exculpatory material in the personnel files in its possession.  Because the United

States has disclosed the only information responsive to Huerta-Rodriguez' request, and because the United States does not have New Mexico State Police personnel files in its possession, the Court will deny the request to disclose all personnel files of the officers and agents involved in the search of Huerta-Rodriguez' residence. The Court will also deny Huerta-Rodriguez' request for an in camera review of the personnel files.

**I.      THE COURT WILL CONSIDER HUERTA-RODRIGUEZ' REQUEST FOR PERSONNEL FILES.**

The United States first asks the Court to deny this request because it lacks specificity and lacks any factual support. As to specificity, the United States contends that Huerta-Rodriguez' motion lacks specificity, only citing that the motion "contemplates" certain items such as citizen complaints or disciplinary actions. United States' Response at 5. The Court believes, however, that Huerta-Rodriguez has been reasonably specific and that the United States understands what he wants it to produce. He has identified with relative precision where he wants the United States to look and what he wants the United States to produce. The Court does not believe that the requests fail to provide specificity or sufficient factual support, and will consider the request.

**II.     THE UNITED STATES MUST SEARCH THE FILES IN ITS POSSESSION FOR BRADY V. MARYLAND AND GIGLIO V. UNITED STATES MATERIAL, BUT NEED NOT PRODUCE FILES IT DOES NOT POSSESS.**

It may be that what the United States is arguing is that Huerta-Rodriguez' request does not specificity what exculpatory documents he is seeking in the personnel files. By including a recitation of the facts in its response, the United States underscores the principal issue in Huerta-Rodriguez' motion for disclosure, i.e., that Gallegos' version of the facts is irreconcilable with Huerta-Rodriguez' version. In essence, Huerta-Rodriguez alleges that the agents blocked the door so that his wife could not close it, thereby avoiding the confrontation with the officers. This point

-14-

is key.  If true, then the police/citizen encounter was not -- as the United States contends -- voluntary.  It appears to the Court that the hearing on the motion to suppress will be a swearing match between the United States' witnesses and Huerta-Rodriguez and his wife.  One side is not telling the truth.

If Huerta-Rodriguez' version of what transpired at the time of the search of his residence is correct, that scenario may indicate that the officers involved have been less than completely candid.  Huerta-Rodriguez' counsel submits that, if Huerta-Rodriguez' version of the facts is correct, the officers may have engaged in police misconduct.  Huerta-Rodriguez suggests that there may be similar acts of misconduct reported in their personnel files.  He does not suggest that there is evidence in the personnel files, but argues that there may be information which may be admissible under rule 404(b).  If Huerta-Rodriguez' version of the relevant facts is correct, it is more likely something improper is in one of the officers' files.  If his allegations against these officers are correct, then they may well be rogue officers who will likely have other evidence of misconduct in their personnel files.  The stark reality is that, in a swearing match between a police officer and a defendant accused of a crime -- and such a swearing match cannot be avoided in this case -- the police officer, with all else being equal, often prevails.

A defendant has a legitimate interest in exculpatory information contained in police personnel files.  Moreover, anything that affects the officers' credibility is potentially exculpatory to Huerta-Rodriguez' defense, and this fact is especially true in a case such as his, where the gravamen of his defense will be the unbelievability of the police witnesses' testimony.  See Denver Policeman's Protective Ass'n v. Lichtenstein, 660 F.2d 432, 436 (10th Cir. 1981)("Where the only prosecution witnesses are the police officers involved, anything that goes to their credibility may be exculpatory.").  When the only witnesses against a defendant are police officers, anything that

goes to their credibility is exculpatory and admissible.  See id.  Accordingly, Huerta-Rodriguez is entitled to disclosure of all exculpatory material contained in the police personnel files of the United States' witnesses if the United States has possession of the files and/or can be reasonably expected to secure these files.

While the language of rule 16 is permissive, it does not authorize "a blanket request to see the prosecution's file," and a defendant may not use the rule to engage in a "fishing expedition" intended to see if potentially useful information may present itself.  United States v. Maranzino, 860 F.2d 981, 985-86 (10th Cir. 1988)(citing Jencks v. United States, 353 U.S. 657, 667 (1957)).  Rule 16 does not obligate the United States to produce information which it does not possess.  See United States v. Badonie, 2005 U.S. Dist. LEXIS 21928, at **5-6 ("It is well settled that there is no affirmative duty upon the government to take action to discover information which it does not possess.")(quoting United States v. Tierney, 947 F.2d at 864).  Nor is the United States required to secure information from third parties.  See United States v. Gatto, 763 F.2d at 1048 (holding that rule 16 does not contain a due-diligence element requiring a prosecutor to search for evidence not within the government's possession, custody, or control).  While Huerta-Rodriguez is entitled to exculpatory material in the United States' possession without a request, he is not entitled to anything from the United States not in its possession.  Thus, the United States need not produce any files not in its possession, but must search the officers' files in its possession.  If it received possession of the state officers' files, it must search them.  It must also search the files of all federal agents.  To the extent that Huerta-Rodriguez' motion requests disclosure of exculpatory information in the United States' possession, the motion is granted in part.

**III.    BECAUSE THE UNITED STATES HAS PRODUCED THE INFORMATION IT HAS TO HUERTA-RODRIGUEZ, AND BECAUSE HUERTA-RODRIGUEZ IS NOT ENTITLED TO THE BREADTH OF INFORMATION HE REQUESTS, THE COURT WILL DENY THE REMAINDER OF HIS MOTION.**

In this case, the United States requested extra time to respond to Huerta-Rodriguez' motion for production to review the New Mexico State Police personnel files for Gallegos and possibly other officers.  Moreover, the United States disclosed some information it learned from Gallegos' personnel file to Huerta-Rodriguez.  The Court accepts the United States representation that it has disclosed all Brady v. Maryland and Giglio v. United States material to Huerta-Rodriguez contained in Gallegos' personnel file.  The Court does not believe it necessary, nor does the case law support, ordering the United States to obtain and disclose the entire personnel files to Huerta-Rodriguez, as his motion requests.  Because Mr. Cairns represented that the United States has reviewed the files in its custody and reviewed the files of the New Mexico State Police officers involved in this case, the Court also believes that it is unnecessary to order the United States to produce those files to the Court for an in camera review.  Moreover, the United States does not have in its possession the personnel files of the New Mexico State Police officers.  See United States v. Combs, 267 F.3d at 1173 (observing that Brady v. Maryland does not oblige the United States to obtain evidence from third parties); United States v. Tierney, 947 F.2d at 864 ("It is well settled that there is no affirmative duty upon the government to take action to discover information which it does not possess.").  If Huerta-Rodriguez believes he requires possession of those files, he will need to subpoena them.  The Court, therefore, will deny Huerta-Rodriguez' motion without prejudice to him raising the issue with the Court again if he believes that the United States has information in its possession that should be disclosed and which it has not disclosed.

Huerta-Rodriguez is also entitled to renew his motion to the Court if he does not get

sufficient representations from the United States on Mondragon, Maes, or any other officer or agent involved in the search of Huerta-Rodriguez' home.  At the hearing, the Court was under the impression that Huerta-Rodriguez was satisfied with what the Court was doing and how it was proceeding.  Because of the breadth of his request, however, the Court may not have ruled specifically on each and every person identified in his broad request.  The Court thus denies the remainder of the requests in the motion without prejudice to Huerta-Rodriguez renewing his motion if he wants to do so later regarding any specific officer or on some exculpatory information in those files.

**IT IS ORDERED** that the Defendant's Motion for Disclosure of Police Personnel Files is granted in part and denied in part.  The Court will require Plaintiff United States of America to review the personnel files of any officers involved in the search of Huerta-Rodriguez' house in its possession for exculpatory material, consistent with <u>Brady v. Maryland</u> and <u>Giglio v. United States</u>, and present such information to Defendant Antonio Huerta-Rodriguez.  The Court otherwise denies the motion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Linda Mott
Norman Cairns
  Assistant United States Attorneys
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Mario A. Esparza
Las Cruces, New Mexico

     *Attorney for the Defendant*